## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEC DEVON KREIDER,** | : | **Civil No. 3:15-CV-1112** |
| | : | |
| **Plaintiff** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JOHN WETZEL, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION

This is an action brought by Alec Devon Kreider, an inmate in the custody of the Pennsylvania Department of Corrections, who alleges that while he was confined at the State Correctional Institution at Coal Township, prison officials unlawfully denied him access to several books on the grounds that they violated prison policies because they contained nude images or otherwise were determined to present a security risk to the institution.   Kreider contends that the denial violated a host of constitutional safeguards, including his First Amendment right to free speech, due process and equal protection, among others.   The defendants include the Secretary of the DOC, John Wetzel, as well as Therese Jellen, the mailroom supervisor at SCI-Coal Township, Vincent Mooney, the prison's Superintendent, and Diana Woodside, the Policy Director for the Department of

Corrections.  The defendants have moved to dismiss the amended complaint, and for the reasons that follow it will be recommended that the motion be granted in part and denied in part.

## II.   **BACKGROUND**

In 2013, the plaintiff was incarcerated at SCI-Coal Township.  The plaintiff's mother sent him a book called "Art Models 3," which arrived on or about June 27, 2013.  The book was evidently flagged by Therese Jellen, the mailroom supervisor and referred to the Incoming Publications Review Committee ("IPRC"), which denied the plaintiff permission to possess the book, observing that the book contained nudity and therefore ran afoul of DOC Policy DC-ADM 803.  (Doc. 26, p. 4.)  The plaintiff appealed the IPRC's decision, asserting that the book was permissible under DC-ADM 803 because it exhibited nudity for "artistic purposes".  Kreider appealed the denial to Defendant Vincent Mooney, who upheld the denial on July 2, 2013.  Plaintiff appealed this decision as well, which was upheld in a decision that defendant Diana Woodside, the DOC's Policy Director, issued on July 25, 2013.  In lieu of having the book destroyed the plaintiff was permitted to have it mailed to a friend.

The plaintiff alleges that he was similarly denied possession of four other books while housed at SCI-Coal Township, including "MW," "Ode to Kirohito Part 1," "Ode to Kirohito Part 2," and "And Their Memory Was a Bitter Tree."

According to the IPRC, these books were denied either because they violated the DOC's rules regarding depiction of nudity in books, or because they represented a security risk.   Notably, there is no substantial information in the limited record currently before us to confirm what is actually depicted in these texts.

Having been denied possession of these materials, and frustrated by what his inability to prevail in any of his appeals of the IPRC's decisions, the plaintiff commenced this lawsuit on June 8, 2015.  (Doc. 1.)  The undersigned screened the complaint pursuant to 28 U.S.C. § 1915, and issued a report and recommendation on June 10, 2015.  (Dc. 9.)  In that report, it was recommended that the complaint be dismissed with respect to all claims asserted against the Commonwealth of Pennsylvania, and SCI-Coal Township itself, on the grounds that these defendants were immune under the Eleventh Amendment to the United States Constitution. The District Court adopted the report and recommendation on July 15, 2015.

The plaintiff was granted leave to submit an amended complaint, which he filed on November 13, 2015.  In the amended complaint, the plaintiff avers that the decision to deny him possession of the five publications violated his First Amendment right to free speech; constituted a denial of a property right in violation of the Fifth Amendment to the United States Constitution; amounted to a violation of his right to equal protection and due process of law guaranteed by the Fourteenth Amendment; and further violated the Religious Land Use and

Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc et seq. "RLUIPA").

The plaintiff seeks injunctive relief and damages for the claimed violations.

The defendants moved to dismiss the complaint on February 4, 2016.  The motion has now been fully briefed and is ripe for disposition.

## III.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b) (6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir.2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. *Id*. at 556. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir.2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir.2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir.1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir.2002); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994).

## IV.   **DISCUSSION**

The defendants urge the court to dismiss the amended complaint at the outset of this litigation for a variety of reason, which will be addressed separately below.  Notably, aside from their argument that they are entitled to qualified immunity from the plaintiff's claims, the defendants largely ignore what we perceive to be the cornerstone of the plaintiff's amended complaint:  namely, Kreider's contention that the defendants' individual and collective decision to prohibit him from possessing or viewing five books violates his right to Free Speech under the First Amendment.  For the reasons discussed below, although we agree that a number of the plaintiff's claims fail on the face of the complaint alone, the plaintiff's First Amendment and equal protection claims should not be disposed without the parties being afforded the opportunity to engage in discovery so that the defendants' stated justifications for denying the plaintiff access to the books can be more fully considered in the context of the developing law in this field, and on the basis of a more fully developed factual record.

### A.     **Lack of Personal Involvement**

The defendants first argue that the amended complaint should be dismissed as to all defendants because none of them is alleged to have been personally involved in any of the violations alleged.  With the exception of Secretary Wetzel,

who has been named only because of his supervisory role within the DOC, we disagree.

The plaintiff brings his claims for alleged constitutional violations pursuant to 42 U.S.C. § 1983.  Section 1983 provides a provides a cause of action to redress violations of federal law; it is not a source of substantive rights, but is merely a procedural vehicle used to vindicate those rights otherwise protected by federal law.  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a claim under § 1983, a plaintiff must demonstrate a deprivation of a "right secured by the Constitution and laws of the United States . . . by a person acting under color of state law."  *Kneipp*, 95 F.3d at 1204 (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)).

In order to state a claim against a state actor under § 1983, a plaintiff cannot base his claim on a theory of *respondeat superior*; instead, he must show that each named defendant was personally involved in the events or circumstances that give rise to the claim.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . ."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676-77 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130

(3d Cir. 2010).  Personal involvement may be demonstrated through allegations of "personal direction or of actual knowledge and acquiescence."  *Rode*, 845 F.2d at 1207.  Allegations of participation or actual knowledge need to be made with "appropriate particularity."  *Id.*

Notably, the mere filing of a grievance is not sufficient to establish the actual, personal knowledge necessary to demonstrate personal involvement in a discrete constitutional violation.  *Rode*, 845 F.3d at 1208.  Moreover, participation in the after-the-fact review of a grievance or an appeal is generally not enough to establish personal involvement in the underlying violation being grieved.  *See, e.g., Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006) (allegations that prison officials and administrators responded inappropriately to an inmate's grievances do not establish the personal involvement of the officials and administrators in the underlying deprivation).  Indeed, although inmates have a right to seek redress of grievances as part of their right of access to the courts, this right is not infringed by the failure of prison officials to address those grievances.  *Booth v. King*, 346 F. Supp. 2d 751, 761 (E.D. Pa. 2004).  This is because inmates do not have a constitutionally protected right to a grievance procedure.  *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137-38 (1977).

Review of the amended complaint reveals no allegations of personal involvement with respect to Secretary Wetzel, and he appears to have been sued

simply because of his role as the head of the Department of Corrections and as a policymaker. The lack of allegations that Secretary Wetzel was personally involved in any of the allegedly unconstitutional actions that make up the plaintiff's claims compels his dismissal from this lawsuit.

The defendants also argue that Vincent Mooney, the Superintendent of SCI-Coal Township, lacked personal involvement since the claims are entirely based upon the fact that Mr. Mooney is the Superintendent at SCI-Coal Township and was therefore involved in reviewing grievances and appeals of the IPRC's denials. Although in many cases the mere review of grievances will not establish personal involvement in an underlying violation, here the plaintiff is really contending that Defendant Mooney was personally involved because he was presented with a grievance that was intended to correct an *ongoing* violation, namely the deprivation of books that the plaintiff believes he had a First Amendment right to possess. In essence, the plaintiff is claiming that Defendant Mooney's independent act of denying his grievance is personal involvement here because it represents an independent denial of the requested material, and does not merely constitute the denial of a grievance that had been brought to address a discrete, past violation. Thus, we believe it would be premature to dismiss the plaintiff's First Amendment claims against Defendant Mooney at this stage because we read the plaintiff's claims as alleging that Defendant Mooney, by upholding the IPRC's decision and

refusing to grant the plaintiff access to the requested published material, has also personally involved himself in the alleged denial of the plaintiff's First Amendment rights.   In such cases, the Third Circuit has found that personal involvement may lie even if the personal involvement comes in the form of denying relief with respect to an alleged ongoing First Amendment violation.  *See, e.g., Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003) (holding that the Administrator of Religious and Family Services within the DOC had sufficient personal involvement in a dispute over the denial of religious texts, where the Administrator was alleged to have denied the inmate's grievances on the grounds that the texts in question were not religious in nature). Thus, with respect to the First Amendment and equal protection claims only, we do not agree with the defendants' contention that Defendant Mooney should be dismissed for lack of personal involvement.

The same analysis and considerations caution against dismissing Defendant Woodside at this stage of the litigation, where she is alleged to have been personally involved in the denial of the requested written materials by denying his final-level appeal of his grievances.  Again, we read the complaint to allege that Defendant Woodside is named not because she was sitting in review of lower decisions regarding allegations of past misconduct, but because she independently acted to deny the plaintiff's request for access to these disputed texts.

10

We reach a similar conclusion with respect to Therese Jellen, the mailroom supervisor at SCI-Coal Township.  The defendants assert that the plaintiff has not alleged sufficient personal involvement on her part, but we believe it is premature to make that determination.  Although the plaintiff does not allege that she was on the IPRC, or indeed that she was directly involved with the IPRC's decision to prohibit the plaintiff from possessing the materials he desired, he has claimed that she flagged the books and at least made an initial determination that the books should not be provided to him.  It is not clear at this stage what level of involvement Ms. Jellen may have had with respect to the ultimate decision to prohibit the plaintiff from accessing the five books in question, and thus we believe that any determination on whether Ms. Jellen had sufficient personal involvement with respect to the First Amendment issues in this case should await further factual development.

### B.      Claims For Monetary Damages Against the Defendants in Their Official Capacities Should be Dismissed

The plaintiff has purported to be seeking compensatory and punitive damages from the defendants in both their individual and official capacities as state actors.  These claims should be dismissed under well-settled law.

Unless consented to by a state, the Eleventh Amendment bars plaintiffs from suing a state or any of its agencies in federal court.  *Pennhurst v. Halderman*, 465 U.S. 89, 99-100 (1984).  The Supreme Court has long held that a suit brought

against an individual acting in his or her official capacity as a state actor is the equivalent of a suit against the state, and is therefore also barred by the Eleventh Amendment. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Eleventh Amendment immunity can only be abrogated by an act of Congress or state consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54-55 (1996). Congress has not abrogated Eleventh Amendment immunity in this field, *Jones v. Hashagen*, 512 F. App'x 179, 182 (3d Cir. 2013), and the Commonwealth of Pennsylvania has, by statute, expressly withheld consent to suit in federal court. See 42 Pa. Cons. Stat. Ann. § 8521(b). Accordingly, any claims that the plaintiff has attempted to bring against the remaining corrections defendants in their official capacities as state actors should be dismissed. Of course, Kreider remains free to pursue damages claims against these defendants in their individual capacities.

### C.   The Plaintiff's Fifth Amendment Claims Fail Because the Defendants are State Officials, Not Federal Officers

In his amended complaint the plaintiff has framed his due process claims under both the Fifth and the Fourteenth Amendments to the United States Constitution, but in doing so the plaintiff misperceives the reach of the Fifth Amendment. The Due Process Clause of the Fifth Amendment "only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2011); *see also Nguyen v. United States Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983)

("The limitations of the fifth amendment restrict only federal action . . . ."). There is no dispute that the defendants in this case are state officials, and no federal defendant is named. The plaintiff's claims under the Fifth Amendment therefore are without merit and should be dismissed.

D. **The Plaintiff's Fourteenth Amendment Due Process Claims Fail Because the DOC's Prison Grievance Policy Has Been Deemed to Provide an Adequate Post-Deprivation Remedy**

To the extent that the plaintiff is seeking to challenge the Department of Corrections' process used for screening incoming books and materials for compliance with prison policy on the grounds that the process itself violates the Due Process Clause of the Fourteenth Amendment, we find that the claim fails on its face. The plaintiff has acknowledged that the DOC maintains a grievance process that provides for post-deprivation remedies – even if the plaintiff in this case is dissatisfied with the result of that process, or with the fact that it does not involve independent review by non-DOC officials. Thus the plaintiff's claim that the withholding of certain books that were sent to him amounts to a violation of his right to procedural due process is unavailing.

Inmates are foreclosed from bringing claims under 42 U.S.C. § 1983 to vindicate a property right where adequate post-deprivation remedies exist under state law. *See Hudson v. Palmer*, 468 U.S. 517, 532–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (intentional deprivation of property); *Parratt v. Taylor*, 451

U.S. 527, 530, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) (negligent deprivation of property). As the plaintiff's own complaint confirms, "[i]n Pennsylvania, the state prison system has established an internal grievance procedure through which the state hears claims and, when appropriate, provides remedies [.]" *Mattis v. Dohman*, 260 F. App'x 458, 461 (3d Cir.2008). In this case, the plaintiff acknowledges that he took advantage of the post-deprivation process available to him by filing a grievance relating to the alleged destruction or loss of his personal property, namely the deed to his home. Regardless of whether the plaintiff is satisfied with the outcome of this grievance process, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533; *see also Monroe v. Beard,* 536 F.3d 198, 210 (3d Cir.2008); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 422 (3d Cir.2000) (holding that county prisoner had adequate post-deprivation remedy through a grievance system that permitted prisoners to complain about "any" matter that is "unjust" and provided for direct appeal to the warden).

The Department of Corrections has enacted DC–ADM 804, entitled "Inmate Grievance System," which provides that "[i]f an inmate desires compensation or other legal relief normally available from a court, the inmate shall request the

specific relief sought in his/her initial grievance." Courts in this circuit have repeatedly found that this policy is constitutionally adequate to provide inmates with meaningful post-deprivation remedies. *See, e.g., Tarselli v. Harkleroad*, Civ. A. No. 10–1266, 2012 WL 603219, at *6 (W.D.Pa. Feb.23, 2012); *McEachin v. Beard*, 319 F.Supp.2d 510, 514–515 (E.D.Pa.2004) ( "[T]he DOC prison grievance system has been recognized by courts in this Circuit as providing adequate post-deprivation remedies to inmates in satisfaction of the Due Process Clause"). Moreover, the failure of prison officials to provide what the inmate deems to be a favorable response to a grievance does not demonstrate that the process was inadequate or constitutionally deficient. *See Morales v. Beard*, Civ. A. No. 09–162, 2009 WL 2413425 (W.D.Pa. July 31, 2009); *McEachin*, 319 F.Supp.2d at 515; *Austin v. Lehman*, 893 F.Supp. 448, 454 n. 4 (E.D.Pa.1995) ("Of course, that Plaintiff did not prevail in this procedure in no way affects the procedure's adequacy as a post-deprivation remedy.").

In this case, the plaintiff's own complaint acknowledges that he had what the courts have determined to be an adequate post-deprivation remedy available to him through the prison grievance system, and he has not alleged any facts to suggest that this remedy was not meaningful, regardless of whether he was satisfied with the outcome. Accordingly, the plaintiff's due process claim relating to the alleged confiscation of written materials, and the decision to deny him possession of

materials deemed to violate prison policies regarding nudity and institutional security concerns, fails in light of the undisputed post-deprivation process that was afforded to Kreider.

The plaintiff devotes much of his brief to complaining that the grievance policy, and the scheme that the DOC has developed for allowing inmates to challenge the deprivation of personal property, did not result in him securing the right to possess the books he desired.  As noted, however, the plaintiff's dissatisfaction with the result of this process does not alter the fact that the post-deprivation remedy that is made available to inmates was, in fact, made available to the plaintiff and he sought to avail himself of that process.  The fact that the process did not yield the response he had hoped for does not render that process inadequate or constitutionally wanting.  Accordingly, to the extent that the plaintiff is attempting to advance stand-alone claims relating to the adequacy of the DOC's post-deprivation processes relating to the confiscation of property, those claims should be dismissed.

### E.     The Plaintiff Fails to State a Claim Under RLUIPA

Perhaps the most curious of the plaintiff's claims is his assertion that the defendants violated RLUIPA by confiscating the five books that he wished to possess – books that he never describes as being religious texts or related to his religious beliefs or practices, which are also not explained in any fashion.  Indeed,

the plaintiff includes no allegations of any kind as to how the decision to prohibit the introduction of the five books into the prison represented any sort of burden on his religious exercise as an inmate.

Section 3 of the RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless the government demonstrates that the burden is in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that . . . interest."  42 U.S.C. § 2000cc-1(a).  If a plaintiff "produces prima facie evidence to support a claim alleging a [RLUIPA] violation . . . the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether [the challenged practice or law] substantially burdens the plaintiff's exercise of religion."  *Id.* § 2000cc-2(b). As this suggests, "[a] plaintiff-inmate bears the burden to show that a prison institution's policy or official practice has substantially burdened the practice of that inmate's religion." *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007). For purposes of RLUIPA, "a substantial burden exists where:  1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts

substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs." *Id.* at 280 (original emphasis).

Here, the plaintiff has entirely failed to allege how the deprivation of five books substantially burdened his religious exercise; indeed, there are no allegations at all to suggest what the plaintiff's religious beliefs may be, or how the books themselves relate in any way to those beliefs.  The amended complaint contains allegations that one of the books in question was an "art book," (Doc. 26, ¶ 15), and that the other prohibited texts were "graphic novel[s]."  (Doc. 26, ¶¶ 17, 19, 21, 23.)  Nothing in the complaint suggests that any of the books were religious in nature, or that they served some sort of religious purpose.  Instead, the amended complaint contains only a generic and spare allegation that the defendants deprived him of "publications holding religious significance and of his ability to freely express his soncerely [sic] held beliefs."  (Doc. 26, ¶ 31.)  We agree with the defendants that such a conclusory allegation, unadorned with any kind of factual detail or explanation, falls far short of what is required to state a viable claim for relief under RLUIPA, and should be dismissed.[1]

---

[1]   We note further that to the extent the plaintiff is attempting to sue the individual defendants in their individual capacities for RLUIPA violations, the claims should also be dismissed because "RLUIPA does not permit an action against Defendants in their individual capacities." *Sharp v. Johnson*, 669 F.3d 144, 155 (3d Cir. 2012).  Moreover, the plaintiff fares no better if he tries to sue these defendants in their official capacities for damages under RLUIPA, since the Supreme Court has held that States like Pennsylvania "did not consent to waive their sovereign

**F.     The Plaintiff's Equal Protection Claim Should Not Be Dismissed at this Time**

The defendants also urge the court to dismiss the plaintiff's spare allegation that the decision to restrict him from possessing the five books in question amounted to a violation of the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV. This is not a requirement that all persons be treated identically, but is instead a general direction that similarly-situated persons be treated alike.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).   In the prison context, an inmate must show that he was treated differently from similarly situated inmates due to intentional or purposeful discrimination. *Wilson v. Schillinger*, 761 F.2d 921, 929 (3d Cir. 1985); *Francis v. Carroll*, 659 F. Supp. 2d 619, 629 (D. Del. 2009).   "Absent the present of a fundamental right or a protected class (e.g., race), the disputed prison policy is subject to rational basis review, which requires only 'that a regulation which results in unequal treatment of an inmate bear some substantial relationship to a legitimate penological interest." *Id.* (quoting *Boyer v. Taylor*, No. 06-694-GMS, 2007 WL 2049905, at *10, 2007

---

immunity with respect to RLUIPA suits for damages against State employees in their official capacities."  *Id.* (citing *Sossamon v. Texas*, 563 U.S. 277, 131 S.Ct. 1651, 1655, 179 L.Ed.2d 700 (2011).

U.S. Dist. LEXIS 51159, at *29 (D. Del. July 16, 2007); see also Turner v. Safley, 482 U.S. 78, 89 (1987).

An equal protection claim may also be brought by a "class of one," where a plaintiff alleges that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Overly v. Garman*, 599 F. App'x 42 (3d Cir. 2015) (holding that in order to establish a class-of-one equal protection claim a plaintiff must show that (1) the defendants treated him differently than others similarly situated, (2) the defendants did so intentionally, and (3) there was no rational basis for the difference in treatment).

In this case, the plaintiff's position is initially somewhat confusing.  In the amended complaint he seems to be suggesting that he was not treated differently than other inmates, but that all inmates were treated alike by being unable to have copies of the books at issue, and therefore have are treated differently than non-prisoners.  That clearly would not support an equal protection claim, since prisoners are by definition not similarly situated with non-prisoners.

However, it also appears that the plaintiff may be claiming that the books that he was prevented from possessing are housed at other libraries within the DOC, and that other inmates may have access to them.  Although the defendants

seem to dispute this contention, and despite the somewhat opaque contours of this claim, we find that with respect to this very specific and narrow claim the defendants have not carried their burden of demonstrating that they are entitled to judgment in their favor based solely on the allegations of the complaint because they have not satisfied their minimal burden of establishing a legitimate penological interest justified the decision.   Although the defendants well may be able to do this with the support of affidavits or other evidence, we believe it would be premature to dismiss this claim at this stage.   Accordingly, it will be recommended that the motion be denied with respect to the plaintiff's equal protection claims against all defendants other than Secretary Wetzel who, again, is not alleged to have had any personal involvement in the alleged violation.   If the defendants believe that there is evidence or other legal grounds for compelling judgment in their favor, they would be free to advance those arguments in a properly filed motion for summary judgment.

## E.     Qualified Immunity

Lastly, we turn to the defendants' assertion that they are entitled to qualified immunity from all of the plaintiff's claims.   As noted above, the defendants have not squarely addressed in any real substantive way the plaintiff's principal basis for bringing this litigation:   namely, that the defendants' collective decisions to deny him possession of five books violated his rights under the First Amendment.

Instead, the defendants generally raise the issue of qualified immunity as a bulwark against all of the plaintiff's claims, asserting that no reasonable DOC official in the defendants' positions would have had cause to realize that their decision to deny the plaintiff the books in question could amount to a violation of federal law. Although we agree that the plaintiff's due process claims, and claims under RLUIPA fail on the face of the complaint, we find that the amended complaint adequately alleges violations of the plaintiff's right to equal protection and to First Amendment expressive material, and find further that it would be premature to conclude that the defendants are entitled to qualified immunity before any discovery has taken place. Furthermore, to the extent the plaintiff is seeking injunctive relief, qualified immunity would not be available as a defense.

Qualified immunity protects government officials from civil liability for any action that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The immunity is intended to "shield government officials performing discretionary functions, including police officers, 'from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kopec v. Tate*, 361 F.3d 772, 776 (3d Cir. 2004) (quoting *Harlow*, 457 U.S. at 818). "An officer is entitled to qualified immunity if he meets at least one of a two prong

22

inquiry." *Patrick v. Moorman*, 536 F. App'x 255, 259 (3d Cir. 2013).  It is well settled, however, that qualified immunity does not bar actions for injunctive or declaratory relief, which in part is what the plaintiff is seeking in this action.  *See, e.g., Hill v. Borough of Kutztown*, 455 F.3d 225, 244 (3d Cir. 2006) ("[T]he defense of qualified immunity is available only for damages claims – not for claims requesting prospective injunctive relief.").

With respect to the first prong of the test, a court must determine whether the official violated a statutory or constitutional right.  Secondly, the court must determine whether that right was "clearly established" at the time of the challenged conduct.  *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011); *Kopec*, 361 F.3d at 776 (citing *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).  The court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first "in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is "clearly established" when, "at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *al-Kidd*, 131 S. Ct. at 2083 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (alterations in original); *see also Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012).  In

23

deciding whether a right has been clearly established, the court must define the right allegedly violated at the appropriate level of specificity.  *Sharp*, 669 F.3d at 159.

In some cases, despite their being no precedent directly on point, "an action can still violate a clearly established right where a general constitutional rule already identified in the decisional law applies with obvious clarity."  *Id.* Furthermore, "[i]f no case speaks directly to the legality of the officer's conduct, the challenged conduct [needs] to be such that reasonable officers in the defendant['s] position at the relevant time could have believed, in light of what was in the decided case law, that their conduct was lawful."  *Geist v. Ammary*, 40 F. Supp. 3d 467, 485 (E.D. Pa. 2014) (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1255 (3d Cir. 1994) (internal quotations omitted).

In this case, the plaintiff is contending that the defendants have violated his right under the First Amendment to receive and read certain texts, ostensibly because these materials contain depictions of nudity or otherwise present a threat to institutional security.  The plaintiff also claims that the defendants' enforcement of prison policy on this point, to deny him access to the desired books, is an equal protection violation.  Resolution of these claims is, in general, highly fact dependent, and causes the court to find that qualified immunity should not be

granted on the complaint alone, or on the defendants' spare assertions regarding what the books depicted.

We noted above that there remain outstanding issues with respect to the plaintiff's equal protection claim that warrant allowing that claim to move forward so that some discovery may be undertaken into the plaintiff's contention that he was treated differently than similarly situated inmates – if that is, in fact, his contention.   Although the parties have largely ignored the First Amendment precedent that bears upon the plaintiff's claim, we offer a brief overview because it demonstrates the fact-dependent nature of the inquiry.

"Inmates do not completely forego their constitutional rights because of their incarcerated status, but those rights are necessarily limited."  *Sharp*, 669 F.3d at 155 (citing *Waterman v. Farmer*, 183 F.3d 208, 213 (3d Cir. 1999).  As such, "[a]n inmate retains his First Amendment rights that are 'not inconsistent with this status as a prisoner or with the legitimate penological objectives of the corrections system.'"  *Id.* (quoting *Pell v. Procunier*,  417 U.S. 817, 822 (1974)  The plaintiff's First Amendment claim is thus fact and context specific, and depends upon a balancing of the factors that the Supreme Court first enunciated in *Turner v. Safley*, 482 U.S. 78, 89 (1987).   This test attempts to balance an inmate's First Amendment rights against the penological interests of the prison in which he is confined.  *Turner* cautioned that subjecting prison officials' daily judgments to a

strict scrutiny analysis would be unreasonable and risk interfering with prison administrators' work.  482 U.S. at 89.  Accordingly, balancing the interests of the inmate and the prison, the Court found that "when a prison regulation impinges upon inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.*

The Court prescribed a four-part analysis that lower courts are to follow in order to determine the reasonableness of a particular prison regulation:  (1) first, there must be a "valid, rational connection" between the prison regulation and the legitimate, neutral governmental interest offered to justify it; if so, courts must consider (2) whether the inmate has an alternative means of exercising the right at issue; (3) the burden that the accommodation would impose on prison resources; and (4) whether any ready alternatives to the regulation exist that would fully accommodate the inmate's rights at *de minimis* cost to valid penological objectives. *Id.* at 89-91.

Following *Turner*, the Third Circuit developed a two-step test to determine whether a prison's regulation or rule is reasonably related to a penological interest. First, the prison has the burden of demonstrating the first *Turner* factor. *Sharp*, 669 F.3d at 156; *Waterman*, 183 F.3d at 218 n.9; *Wolf v. Ashcroft*, 297 F.3d 305, 308 n.2 (3d Cir. 2002).  "This burden is slight, and in certain instances, the connection may be a matter of common sense." *Wolf*, 297 F.3d at 308.  If the

prison satisfies this burden, then courts move to consider the remaining factors. Although the inmate ultimately bears the burden of proving that the regulation or rule being challenged is unreasonable, the corrections defendants must come forward with a legitimate interest justifying the regulation. *See Sharp*, 669 F.3d at 156; *see also Fontroy v.Beard*, 559 F.3d 173, 177 (3d Cir. 2009) ("Although Inmates bear the ultimate burden of showing that the DOC's new mail policy is unconstitutional, it is the DOC Officials' burden to demonstrate that a rational connection exists between the policy and a legitimate penological interest."); *Monroe v. Beard*, 536 F.3d 198, 207 (3d Cir. 2008) (stating  that the party challenging the regulation bears the burden of demonstrating that it is unreasonable, but that the prison must show a legitimate interest justifying the regulation); *Jones v. Brown*, 461 F.3d 353, 360-61.

On this score the Third Circuit has noted that it has "historically viewed these inquiries as being fact-intensive" and that evaluations of prison restrictions under *Turner* require "'a contextual, record-sensitive analysis.'"  *Wolf v. Ashcoft*, 297 F.3d 305, 310 (3d Cir. 2002) (quoting *DeHart v. Horn*, 227 F.3d 47, 59 n.8 (3d Cir. 2000)). Rather than engage in the sort of fact-specific analysis that often is required in this context, the defendants have cited to a few cases from within the Third Circuit or Pennsylvania where courts found that certain challenged prison regulations did not violate the First Amendment, including, *inter alia*, regulations

barring recidivist sex offenders from accessing pornographic materials, *see Waterman*, 183 F.3d at 215; and confiscation of publications that included sexually explicit advertising and pen pal opportunities, which violated DOC policy on the basis of security concerns, *see Angle v. Woodside*, 2015 WL 3968117 (June 30, 2015) (reaching decision after converting a motion to dismiss to one for summary judgment, and considering evidence outside the pleadings).  The defendants also generally direct the court to *Thornburgh v. Abbott*, 490 U.S. 401, 418 (1989), in which the Supreme Court instructed lower courts that they often should "defer to the 'informed discretion' of corrections officials") (quoting *Turner*, 482 U.S. at 90).

We appreciate that in such cases, on a more developed record, courts were capable of making an informed judgment regarding the *Turner* factors and the application of those factors to the specific claims being asserted in those cases.  At the same time, we are also mindful that in other cases, such as *Wolf*, the Third Circuit has cautioned courts that this inquiry is "fact-intensive" and often requires "a contextual, record-sensitive analysis."  297 F.3d at 310 (quoting *DeHart*, 227 F.3d at 59 n.8).  In *Wolf*, the court of appeals further observed that if a district court concludes that the Turner analysis "cannot be undertaken on an undeveloped record, then  the Court should treat the matter as on summary judgment, and rule only after considering the factual basis developed by affidavits or depositions."

28

297 F.3d at 310. Notably, in *Wolf*, the court of appeals reversed a lower court determination made based upon "common sense" that a prison policy that prohibited inmates from viewing movies rated R or NC-17 was constitutionally permissible, and remanded for further consideration of the matter. *Id.* In so ruling, the court of appeals found that a determination as to whether the prison policy imposed permissible limitations on inmate First Amendment rights depended upon a more searching consideration of the four *Turner* factors.

Upon consideration, it is submitted that the plaintiff's First Amendment and equal protection claims require some additional factual development to be fairly considered, and we find that it would be premature to conclude on the basis of the defendants' spare assertions that the Court can reach at judgment as to whether the plaintiff's claims have any merit or, moreover, whether the defendants are entitled to the protections of qualified immunity on these claims to the extent that the plaintiff seeks money damages. As noted, qualified immunity does not reach the plaintiff's additional claim for injunctive and declaratory relief on the grounds that the regulation, and its application, violate his constitutional rights.

## V.    **RECOMMENDATION**

Accordingly, for the foregoing reasons it is RECOMMENDED that the defendants' motion to dismiss be granted in part and denied in part as follows:

1.     It is recommended that the motion to dismiss be GRANTED with respect to Secretary Wetzel on all claims.

2.     It is recommended that the motion to dismiss be GRANTED with respect to the plaintiff's claims for damages brought against the defendants in their official capacities.

3.     It is recommended that the motion to dismiss be GRANTED with respect to the plaintiff's due process and RLUIPA claims.

4.     It is recommended that the motion to dismiss be DENIED with respect to the plaintiff's First Amendment and equal protection claims against defendants Jellen, Mooney, and Woodside.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

/s/  Martin C. Carlson
Martin C. Carlson
United States Magistrate Judge

Dated:  June 16, 2016